Raymond **WILLIAMS**, Petitioner,

v.

**UNITED STATES of America,
Respondent.**

Civil No. 96–40372.
Criminal No. 89–50025–06.

United States District Court,
E.D. Michigan,
Southern Division.

July 27, 1998.

Raymond Williams, Bradford, PA, pro se.

Mark C. James, Detroit, MI, for United States of America.

## MEMORANDUM OPINION AND ORDER DENYING PETITIONER'S § 2255 MOTION

GADOLA, District Judge.

On May 19, 1989, petitioner Raymond Williams was indicted for conspiracy to distribute cocaine in violation of Title 21 U.S.C. §§ 841(a)(1) and 846. A jury found petitioner guilty of these charges on June 1, 1990 and on December 11, 1990, petitioner was sentenced to a prison term of 235 months to be followed by a five-year term of supervised release.

Petitioner challenged his conviction in the Sixth Circuit Court of Appeals, arguing that he was denied a fair trial by the government's failure to timely file a bill of particulars and by a variance between the bill of particulars and the evidence offered at trial. Petitioner also contended that the district court erred in finding him to be an organizer, leader, manager, or supervisor of the drug conspiracy.[1] The Sixth Circuit rejected these arguments and affirmed petitioner's conviction in an opinion and order dated May 1, 1992. *United States v. Williams*, 962 F.2d 1218,1225 (6th Cir.1992).

On October 21, 1996, petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his motion, petitioner claims he received ineffective assistance of counsel when his attorney, Mr. Richard King, allegedly told him his sentence would be eight years regardless of whether he accepted an eight-year plea offer or was convicted at trial.[2] Petitioner also maintains that Mr. King forced him to go to trial. At trial, petitioner was convicted and thereafter sentenced to a prison term of 235 months, which was 11 years and seven months longer than the sentence petitioner allegedly expected to receive based on Attorney King's counsel.

## ANALYSIS

### Standard of Review for A § 2255 Motion

■ To obtain collateral relief under § 2255, petitioner must prove that his sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The grounds for relief are narrower than they would have been on direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.").

### Standard of Review for Ineffective Assistance of Counsel Claims

In this instance, petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In order to succeed on this claim, petitioner must satisfy a two-pronged test. First, petitioner must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The proper standard from which an attorney's performance should be viewed is that of a "reasonably competent attorney." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Kimmelman v. Morrison*, 477 U.S. 365, 375,

---

1. This finding resulted in an enhancement in petitioner's sentence under § 3B1.1 of the United States Sentencing Guidelines.

2. Petitioner seemingly believed that his activities in the conspiracy pre-dated 1987 and that the so-called "new" United States Sentencing Guidelines effective November 1, 1987 would not apply. Petitioner contends that under the sentencing guidelines in existence prior to 1987 (the so-called "old" guidelines), a sentence of eight years was applicable.

106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). There exists a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. The burden is on the petitioner to prove that the representation of counsel was "unreasonable under the prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman,* 477 U.S. at 381, 106 S.Ct. 2574.

In addition to showing that his counsel has been deficient, petitioner must also show prejudice. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. Specifically, this requires petitioner to show that but for counsel's specified errors, there is a reasonable probability the result of the proceeding would have been different. *Id.* In the context of rejected plea offers, the test by which prejudice must be measured is as follows: "Has the defendant established by objective evidence that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the [ ] offer and pleaded guilty?" *Turner v. State of Tennessee,* 664 F.Supp. 1113, 1121 (M.D.Tenn.1987) (adopting the mirror image of the test established in *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

### Petitioner Was Not Denied Effective Representation

This instant motion centers around two questions:

(1) Was Attorney King ineffective in misadvising petitioner about his sentence (i.e., that his sentence would be the same whether he pled guilty or went to trial) and,

(2) If so, is there a reasonable probability that, but for this specified error, petitioner would have pled guilty?

Answering "no" to either of these questions will result in a denial of petitioner's motion.

### The May 5, 1998 Hearing

On May 5, 1998, a hearing was held to fully explore the facts surrounding the two above-mentioned questions. Testifying for the petitioner at the hearing were the following witnesses: Sherman Williams, petitioner's brother, Sheila Williams, petitioner's sister, and Ronald Crain, petitioner's cousin. Petitioner also testified at the hearing. Testifying for the government at the hearing was one witness, Richard King, petitioner's trial and appellate counsel. A brief summary of the relevant portions of each of these witnesses' testimony on May 5, 1998 will now be provided.

### Sherman Williams

The first witness at the May 5, 1998 hearing was petitioner's brother, Sherman Williams. Sherman Williams testified that he telephoned Attorney King at some unspecified time before petitioner's trial to discuss the circumstances of petitioner's case. Sherman Williams testified that although he had never prior to that time met Attorney King, Attorney King nevertheless freely and openly spoke of petitioner's case and assured him that the maximum possible sentence petitioner would receive if he pled guilty or went to trial would be eight years. In addition to this visit, Sherman Williams described a phone conversation conducted four to five weeks prior to trial between Attorney King and petitioner, to which Sherman and other members of petitioner's family listened. Sherman Williams stated, under oath, that he heard petitioner tell Attorney King during this conversation that he wished to plead guilty.

Sherman Williams testified that he visited Attorney King's office with a friend, Charles Craig, after petitioner was convicted. During this visit, so testified Sherman Williams, Attorney King re-affirmed his earlier statement that the maximum possible sentence petitioner would receive was eight years. Sherman Williams testified that it was not until the date of petitioner's sentencing that he was told by Attorney King petitioner would be receiving "a whole lot of time."

### Sheila Williams

At the hearing on May 5, 1998, Sheila Williams was the second witness to take the stand. Like Sherman Williams, she testified to the substance of a phone conversation between Attorney King and petitioner approximately four to five weeks prior to petitioner's trial. Sheila Williams testified that

during the course of this conversation, she heard Attorney King tell petitioner that the maximum sentence he would receive if he went to trial was eight years. Immediately after hearing this, Sheila Williams testified that she "got off" the phone.

### Ronald Crain

The third witness to testify on May 5, 1998 was Ronald Crain, petitioner's cousin and a co-defendant in this matter.[3] Ronald Crain testified that a meeting was held on the first day of trial between the defendants and their attorneys concerning certain plea offers made by the government that very same day. Ronald Crain testified that at that meeting, Attorney King was seated between himself and the petitioner, and therefore he overheard parts of the conversation between Attorney King and the petitioner. Specifically, Ronald Crain testified that he overheard petitioner inform Attorney King that he wanted to accept an eight-year non-guideline plea offer. He further testified that he overheard Attorney King tell petitioner that the maximum sentence he could get if he went to trial was eight years.

### Raymond Williams

Raymond Williams, the petitioner in the matter herein, was the fourth witness to testify at the May 5, 1998 hearing. The petitioner averred that sometime prior to trial and after reviewing discovery materials showing that co-defendant Johnny Henderson would be testifying against him at trial, he discussed the possibility of a plea with Attorney King. Petitioner testified that at that time, no plea bargain had been offered by the government. Petitioner testified that the first time a plea offer was made to him was on the first day of his trial. Petitioner testified that after the plea offer was made, he and Attorney King discussed it. According to the petitioner, both Attorney King and himself initially agreed that the best course of action would be to accept the plea offer. Then, so petitioner testified, much to his surprise, Attorney King unilater-

ally decided to proceed to trial even though petitioner wanted to accept the plea offer.

At the May 5, 1998 hearing, petitioner testified that the first time he informed the court of King's alleged erroneous advice regarding petitioner's sentence and of King's alleged coercion of plaintiff into a trial was in the § 2255 motion. Petitioner acknowledged that he was given an opportunity to speak and bring these matters to the court's attention at his sentencing, but he did not.[4]

### Richard P. King

The final witness at the May 5, 1998 hearing was Attorney King. King testified that he did not recall having any discussion about petitioner's case with Sherman Williams. King testified that his practice was to talk only to his clients and therefore, if he had talked to Sherman Williams, he would have remembered doing so because this would have been a deviation from the norm. Attorney King also testified that while representing the petitioner, the two discussed the applicability of the 1987 United States Sentencing Guidelines to petitioner's conduct. King testified that based on the discovery materials he reviewed prior to trial, he thought that the 1987 Guidelines applied. He testified that he believed, therefore, that the eight-year non-Guideline plea offer made to petitioner on the day of trial was "extremely in [petitioner's] favor" and he was "incredulous" when petitioner declined to accept it. Attorney King further testified that he never advised or forced petitioner to go to trial and that the petitioner knew he would get "a whole lot more time" if convicted at trial as opposed to accepting the plea offer.

### Findings of Fact

■ This court finds that Attorney King never misadvised petitioner about the length of his sentence (i.e., that his sentence would be the same if he pled guilty or went to trial) and never forced petitioner to go to trial as opposed to accept the plea. The following reasons support this court's conclusion.

---

3. Ronald Crain was acquitted at trial.

4. At sentencing, petitioner merely made known his disagreement with the court's decision re-

garding the applicability of the 1987 United States Sentencing Guidelines to his case.

1. First, this court finds the testimony of Sherman Williams lacks credibility. For example, Sherman Williams testified that he telephoned Attorney King's office and without ever having met King, discussed freely and openly the circumstances of petitioner's case. This court can not accept that an attorney, such as King, who, at that time had over 20 years experience in the practice of criminal law, would talk so freely and openly to a person with whom he had never met. It would seem that if Attorney King were so cavalier about the confidentiality between an attorney and his client, something which is normally so scrupulously guarded, he would have a difficult time sustaining his practice or keeping his license. Indeed, Attorney King, himself, was adamant at the May 5, 1998 hearing that he would not discuss a case with anyone but his client.

2. In support of petitioner's contention that he was misadvised about his possible sentence, Sherman and Sheila Williams testified that they listened in on a telephone call during which Attorney King told petitioner his sentence would be no different whether he pled guilty or proceeded to trial. The court does not find this testimony credible. It is a difficult proposition for this court to accept that an attorney with over 20 years experience would advise his client in the manner alleged by the petitioner and his witnesses. The precise reason a criminal defendant pleads guilty is because if the matter goes to trial and the defendant is found guilty, the sentence will almost invariably be greater than the plea offer. Certainly Attorney King, who was an experienced criminal defense attorney, would know this and advise his client accordingly.

Further, this court does not find the testimony of Sherman and Sheila Williams credible with respect to the telephone conversation for another reason. Neither Sherman nor Sheila can remember anything else that was said in the conversation except for what petitioner claims here, to wit: that Attorney King told petitioner he would receive the same sentence if he went to trial or pled guilty. For instance, Sheila Williams testified that she "got off" the telephone immediately following the discussion of petitioner's sentence. It is entirely too convenient and completely incredible that Sheila only heard the portion of the conversation in which a possible sentence was discussed.[5]

3. Ronald Crain testified that he heard Attorney King tell petitioner that there would be no difference in his sentence if he pled guilty or went to trial. His testimony also lacks credibility. First, it contradicts the testimony of Raymond Williams. Petitioner testified that on the day of trial, after receiving an eight-year plea offer prior to the 1987 guidelines, from the government, he and Attorney King both agreed it would be best for petitioner to accept the offer. Crain's version of events does not mention such consent on the part of Attorney King. Further, Crain's testimony lacks any detail beyond hearing Attorney King tell petitioner that he would only get eight years if he pled guilty or went to trial. Mr. Crain's credibility is suspect because his story never went beyond hearing the maximum sentence would be eight years. Mr. Crain knew of no other details.

4. Petitioner testified that he wanted to accept the government's eight year non-guideline plea offer, but that Attorney King railroaded him in to going to trial. Petitioner also testified that Attorney King told him there would be no difference in his sentence if he were convicted at trial or if he accepted the offer. This court finds petitioner's version of the events implausible. Diminishing the credibility of petitioner's story is the fact that he remained silent for six years regarding Attorney King's alleged errors. If these accusations were true, petitioner presumably would have brought them to the court's attention much sooner, perhaps, for instance, when he was presented an opportunity to speak at sentencing.

5. In sum, this court finds all the petitioner's witnesses, and the petitioner himself, lacked credibility. All could remember the alleged erroneous advice by Attorney King

---

5. Also, it should be noted that Sherman Williams testified that this alleged telephone conversation about a possible plea occurred four to five weeks prior to trial. Yet, petitioner testified that he was not presented with a plea offer until the day of trial.

regarding petitioner's sentence, but other details were to them a blur. Perhaps the best example is the testimony of Sheila Williams, petitioner's sister. She could clearly recall the advice Attorney King gave her brother regarding his sentence years ago, but could not recall two of the three medications she is currently taking for depression.

6. Attorney King testified that he informed petitioner that the plea offer was favorable and that petitioner understood he would be receiving "a whole lot more" time in prison if he did not accept the same. He also testified that he did not force the petitioner to go to trial, and that the decision was entirely the petitioner's to make. Having observed Attorney King testify, this court accepts his testimony and finds him to be a credible witness. The demeanor of Attorney King and the clarity and strength of his testimony lend support to his credibility. Moreover, also lending credibility to Attorney King's testimony is the fact that he has been selected to serve as appointed counsel in federal criminal matters in this court. King's inclusion on that list is a testament to his professionalism and skill.

### Findings of Law

In sum, this court is satisfied that petitioner's § 2255 motion must be denied. As discussed in detail above, petitioner's assertion that he was misadvised and forced to go to trial lacks credibility while Attorney King's averments that he did not misadvise petitioner about his sentence or force him to go to trial are credible. Accordingly, this court finds that Attorney King's assistance was not deficient and that petitioner's Sixth Amendment rights were not violated.

Therefore, this court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the motion by petitioner, Raymond Williams, to set aside, vacate, or review sentence, pursuant to Title 28 U.S.C. § 2255 is **DENIED.**

**SO ORDERED.**