**Germaine TYLER, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. No. 96–40304.
Crim. No. 92–50042–02.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 22, 1999.

---

Germaine Tyler, Bradford, PA, pro se.

### MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is a motion by Petitioner Germaine Tyler to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 filed April 21, 1996. Pursuant to an Order from the United States Court of Appeals for the Sixth Circuit, this Court must address whether Petitioner's conviction was marred by ineffective assistance of trial counsel and whether Petitioner's trial was constitutionally tainted because Petitioner's right to counsel was violated. For reasons set forth below, this Court concludes that Petitioner's constitutional rights were violated by ineffective counsel and his § 2255 motion should be granted.

### Factual Background

#### 1. Procedural History

On June 12, 1992, Petitioner was indicted on charges of possession with intent to distribute cocaine base (Count I), distribution of cocaine base (Count IV), and carrying a firearm during the distribution of cocaine base (Count V). The indictment also included claims against Petitioner's co-defendants, Vincent Collier and Sydney Young. Collier and Young pled guilty and agreed to testify against Petitioner.

Between the time of the indictment and the trial, the government offered Petitioner a plea agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The plea agreement included a recommendation of a sentence of 63 to 78 months plus the mandatory 60 months for the firearm charge. By its own terms, the plea agreement expired on September 23, 1992 and it was not accepted by Petitioner or his counsel. The government was willing to accept a plea agreement after this expiration date, however, because the Assistant United States Attorney Marlene Dayne met with Petitioner and Agents

Mark Trombley and Richard Chandler from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") on January 20, 1993 in an effort to reach an agreement on a guilty plea. (*See* Trial Tr. at 2–101.)

Petitioner was originally represented by Attorney Thomas McCombs. On September 24, 1992, Attorney Jonathan Everett Holt filed a substitution of counsel, thereby replacing McCombs as Petitioner's counsel.

On January 25, 1993, Petitioner's jury trial commenced before Judge Stewart A. Newblatt. Petitioner testified on his own behalf at trial and denied all involvement with the alleged drug conspiracy. Petitioner also denied that it was his voice on tape recordings that the government introduced into evidence. The government called as witnesses ATF Agents Trombley and Chandler who testified that Petitioner had admitted to them at the January 20, 1993 meeting that the voice on the tape recordings was his.[1]

On January 26, 1993, the jury returned guilty verdicts on the conspiracy and distribution charges, and a not guilty verdict on the firearm charge. Given the circumstances of the case, the sentencing guideline range was determined to be 235 to 293 months. The offense level calculation included a two-level enhancement for perjury. Judge Newblatt sentenced Petitioner to a prison term of 235 months to be followed by a five-year term of supervised release on each count to be served concurrently. Petitioner filed a timely notice of appeal of his conviction and sentence. The conviction and sentence were affirmed by the Sixth Circuit in an unpublished *per curiam* opinion filed January 20, 1995.

On August 21, 1996, Petitioner filed these proceedings pursuant to 28 U.S.C. § 2255, entitling his petition therein as a "Motion Pursuant to 28 U.S.C. § 2255." In that motion, Petitioner asserted two basic grounds for vacating, setting aside, or correcting his sentence: (1) ineffective assistance of counsel and (2) violations of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). With respect to the ineffective assistance of counsel ground, Petitioner alleged that his counsel failed to adequately represent Petitioner during plea negotiations, failed to be present at a meeting with the Assistant U.S. Attorney and federal agents, failed to move to suppress evidence, failed to call witnesses, instructed Petitioner to perjure himself at trial, was unprofessional and unprepared during trial, failed to notify the Court during sentencing of Petitioner's substantial assistance, and failed to request that the government prove that Petitioner distributed crack cocaine instead of powder cocaine.

On March 10, 1997, Judge Newblatt denied Petitioner's § 2255 motion without holding an evidentiary hearing. On October 27, 1997, the Sixth Circuit granted Petitioner's request for a certificate of appealability of Judge Newblatt's March 10, 1997 Order, certifying the following two issues for appeal: "1) Whether Tyler's conviction was marred by ineffective assistance of trial counsel; and 2) Whether Tyler's right to counsel was violated as alleged and, if so, whether this constitutionally tainted the proceedings."

---

1. On cross-examination at trial, Petitioner was asked whether he told the government agents at the January 20, 1993 meeting that the voice on the tape recordings was his, and Petitioner denied it. (Trial Tr. at 2–96—97.) Attorney Holt stated to Judge Newblatt that Petitioner had insisted all along that the voice was not his: "there is no question that [Petitioner] has denied from the beginning that this was his voice on the tape." (Trial Tr. 2–103.) In response to Petitioner's testimony, the government called as witnesses ATF Agents Trombley and Chandler to testify that Petitioner had indeed admitted at the January 20, 1993 meeting that the voice on the tape recordings was his. (Trial Tr. 2–104—105, 2–107—108.)

In an opinion filed October 20, 1998, the Sixth Circuit entered an order in which it found that Judge Newblatt erred by not holding an evidentiary hearing. *See Tyler v. United States,* 166 F.3d 1215, 1998 WL 764739 (6th Cir.1998). The Sixth Circuit vacated Judge Newblatt's denial of Petitioner's § 2255 motion and remanded the case to this Court for an evidentiary hearing on Petitioner's motion. *See id.*

## 2. Evidentiary Hearings

Evidentiary hearings were held before this Court on July 2 and July 19, 1999 pursuant to the mandate of the Sixth Circuit. Most of the evidence presented related to the circumstances surrounding the January 20, 1993 meeting.

In the course of the evidentiary hearings, Holt testified that he told Petitioner that if Petitioner's version of what happened was not the true story, then the plea bargain was the best deal he was going to get. (7/2/99 Hr'g Tr. at 52.) Holt testified that Petitioner asked how the mechanics of the plea would work, and Holt explained that Petitioner would have to meet with government agents without Holt in attendance. (*Id.*) Indeed, Holt himself arranged the January 20, 1993 meeting at the U.S. Attorney's office. (*Id.* at 54; 7/19/99 Hr'g Tr. at 16.) Holt expected an Assistant U.S. Attorney, a DEA Agent, and a Customs agent to be present at that meeting. (7/19/99 Hr'g Tr. at 16.) Holt testified that he had a deal with the Assistant U.S. Attorney that if Petitioner gave information that led to the arrest and conviction of other people, Petitioner could have the plea agreement. (7/2/99 Hr'g Tr. at 55.) Holt instructed Petitioner to tell the government agents the truth, because the government would eventually find out whether Petitioner's story was true, and if it were not true, then the plea deal would fall through. (*Id.* at 52.)

Holt met with Petitioner the day before the meeting and told him the government agents would probably read him his *Miranda* rights and tape record him and that anything he said could be used against him. (7/2/99 Hr'g Tr. at 55.) According to Holt, Petitioner asked "don't you want to be there?" to which Holt answered "no, I don't want to be there, I don't want to hear about it. I want the fewer people to know about this the better." (*Id.* at 56; *see id.* at 53, 7/19/99 Hr'g Tr. at 20.)

According to Petitioner, Holt said he would represent Petitioner at the January 20, 1993 meeting (7/2/99 Hr'g Tr. at 23), and Petitioner told the government agents immediately before the meeting that he was waiting for his attorney. (*Id.* at 23–24.) Petitioner testified that he called Holt before the meeting began, and Holt told Petitioner that he was busy but Petitioner should just go ahead with the meeting. (*Id.* at 24.) Agent Mark Trombley recalled that Petitioner made a phone call, and Trombley believed it was to Petitioner's attorney. (7/19/99 Hr'g Tr. at 42.)

At the evidentiary hearing, Holt gave several reasons why he would not attend the January 20, 1993 meeting. First, Holt said that there might be a problem if Petitioner told a different story to the government agents than the one he expected Petitioner to tell at trial. (7/2/99 Hr'g Tr. at 52.) Second, Holt testified that he did not think Petitioner would be comfortable talking about Dan Duffie in front of Holt. (*Id.* at 53; 7/19/99 Hr'g Tr. at 20–21.) The government had informed Holt that Duffie possibly was involved with Petitioner. (7/2/99 Hr'g Tr. at 53.) Holt had represented Duffie in two earlier criminal trials involving conspiracies to deliver drugs. (*Id.* at 53.) Petitioner testified at the evidentiary hearing that Duffie was his friend and that Petitioner had bought drugs from and sold drugs to Duffie (*id.* at 12), although Petitioner had denied this at trial. (Trial Tr. at 2–98.) Third, Holt stated that the fewer people who knew what Petitioner would tell the government the better for "security reasons." (7/2/99 Hr'g Tr. at 53; *see id.* at 56, 7/19/99 Hr'g Tr. at 20.) Holt stated that it was better

that even he not know what Petitioner told the government. (7/19/99 Hr'g Tr. at 20.)

When asked whether he thought an attorney could have been of assistance to someone being debriefed by the government, Holt stated, "In general, I would say yes. Under these circumstances I didn't think it would be appropriate for me to attend that meeting." (7/19/99 Hr'g Tr. at 20.)

Petitioner testified that at the end of 1992 he, Holt, and Dayne had listened to tape recordings of telephone conversations that were going to be introduced as evidence at trial. (7/2/99 Hr'g Tr. at 20.) Petitioner testified that he recognized his voice on the tape recordings and told that to Holt. (*Id.* at 20–21.) Holt testified that Petitioner had told him that the voice on the tape recordings was Petitioner's, but that Petitioner also told Holt that he was pretending to make a drug deal in those recordings as a joke. (*Id.* at 54; 7/19/99 Hr'g Tr. at 14–15.) At the January 20, 1993 meeting Petitioner told the government agents that the voice was his. (7/2/99 Hr'g Tr. at 24; *see* Trial Tr. 2–104—105, 2–107—108.) Petitioner testified that he reported to Holt what he told the government agents, and that Holt responded that the government could not use that admission at trial because he was not represented by counsel at the January 20, 1993 meeting. (7/2/99 Hr'g Tr. at 26–27.)[2]

At the evidentiary hearing, Petitioner also testified that he signed a plea agreement at the January 20, 1993 meeting. (7/2/99 Hr'g Tr. at 24.) There is no other evidence that Petitioner actually agreed to accept the plea offer. Agents Trombley and Chandler testified that Petitioner did not say he would plead guilty at that meeting. (7/19/99 Hr'g Tr. at 36, 40.)

On cross-examination, Petitioner testified at the evidentiary hearing that he lied

under oath at his trial. (*See* 7/2/99 Hr'g Tr. at 43.)

On cross-examination, Holt testified that in January, 1999 his license to practice law was suspended for 18 months for misappropriating funds and making false statements designed to obtain money from clients under false pretenses. (7/19/99 Hr'g Tr. at 7–8.)

Following the evidentiary hearing, Petitioner was permitted to file a supplemental memorandum of law. Petitioner filed such a Supplemental Memorandum of Law on August 16, 1999. The government filed a Response to Petitioner's Supplemental Memorandum of Law on August 30, 1999. Petitioner filed a Memorandum in Reply to Government's Response on September 16, 1999.

## Discussion

The Sixth Circuit authorized an appeal with respect to "[w]hether Tyler's conviction was marred by ineffective assistance of trial counsel" and "[w]hether Tyler's right to counsel was violated as alleged and, if so, whether this constitutionally tainted the proceedings." The bulk of the evidence presented by the parties related events surrounding the January 20, 1993 meeting with the government. For reasons set forth below, this Court concludes that Petitioner's motion should be granted because Petitioner's conviction was marred by ineffective assistance of trial counsel as a result of not being represented during plea negotiations and not being present at the January 20, 1993 meeting with government agents. This Court does not reach the other bases for relief asserted by Petitioner.

### 1. Applicable Standards

Title 28, United States Code, Section 2255 provides that:

---

**2.** At trial, Holt tried to elicit from one of the agents that Petitioner had not been represented by counsel at the meeting. Judge Newblatt sustained an objection to Holt's question

and told Holt "[t]hat's dirty pool" if Holt had voluntarily consented to Petitioner being at the meeting without counsel. (Trial Tr. at 2–105.)

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

\*   \*   \*   \*   \*   \*

■ If the court finds ... that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate. 28 U.S.C. § 2255. A defendant seeking to vacate and set aside a sentence pursuant to § 2255 has the burden of sustaining his contentions by a preponderance of evidence. *See Wright v. United States*, 624 F.2d 557, 558 (5th Cir.1980); Charles A. Wright, *Federal Practice and Procedure* § 600 (2d ed.1982.)

■ The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to assistance of counsel in order to protect the fundamental right to a fair trial. *See* U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In particular, a defendant has "the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). An accused is entitled to be assisted by an attorney whose efforts ensure that the trial is fair. *Strickland*, 466 U.S. at 685, 104 S.Ct. 2052. Thus, the Sixth Amendment right to counsel " 'is the right to effective assistance of counsel.' " *Id.* at 686, 104 S.Ct. 2052 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Counsel can deprive a defendant of this right by "simply by failing to render 'adequate legal assistance.' " *Id.* (quoting *Cuyler v. Sullivan*,

446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

In order for Petitioner to prove that he was denied effective assistance of counsel, he must establish that: "(1) his attorney's performance was deficient; and (2) he was prejudiced by this inadequate assistance." *Tyler v. United States*, 166 F.3d 1215, 1998 WL 764739 \*2 (6th Cir.1998) (citing *Meeks v. Bergen*, 749 F.2d 322, 327 (6th Cir. 1984)); *see Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. To prove deficient performance, Petitioner must establish that the representation was " 'unreasonable under the prevailing professional norms and that the challenged action was not sound strategy.' " *Williams v. United States*, 13 F.Supp.2d 616, 618 (E.D.Mich.1998) (Gadola, J.) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)); *see Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052. To prove prejudice, Petitioner "must establish that there is a reasonable possibility that, if not for his counsel's actions or omissions, the result of the trial proceeding would have been different." *Tyler*, 166 F.3d 1215, 1998 WL 764739 \*2 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

The Supreme Court has held that prejudice can be established *per se* where a claimant can demonstrate that "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *United States v. Cronic*, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Several courts have held that plea negotiations constitute a critical stage in criminal proceedings. *See, e.g., United States v. Gordon*, 156 F.3d 376, 379–80 (2d Cir.1998); *United States v. Sammons*, 918 F.2d 592, 602 (6th Cir.1990); *Charris v. Artuz*, 32 F.Supp.2d 139, 141 (S.D.N.Y.1998). Counsel's absence during plea negotiations, therefore, can constitute prejudice *per se.*

■ Petitioner need not establish prejudice if he can establish that his counsel operated under a conflict of interest

that affected his representation. *See Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ("a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief"). The two-part test for ineffective assistance claims has been modified by the Supreme Court in cases involving a conflict of interest. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052 (citing *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)); *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.1987). First, a defendant must establish that his attorney had an actual conflict of interest. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052; *Thomas,* 818 F.2d at 480. A defendant then must establish that this conflict of interest adversely affected his attorney's performance in representing him. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052; *Thomas,* 818 F.2d at 480. In short, this modified test requires the Court to presume prejudice if the defendant shows that his counsel's deficient performance was the result of an actual conflict of interest. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052; *Thomas,* 818 F.2d at 480.

According to the Sixth Circuit, the standard for determining whether an actual conflict of interest exits is as follows:

> We will not find an actual conflict unless appellants can point to "specific instances in the record to suggest an actual conflict or impairment of their interests." ... Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." ... There is no violation where the conflict is "irrelevant or merely hypothetical"; there must be an "actual significant conflict."

*Thomas,* 818 F.2d at 481 (quoting *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.1983) (citations omitted).)

### 2. Analysis

■ As a result of the evidentiary hearings, Petitioner was able to establish that his attorney's performance was deficient and that he was prejudiced by this inadequate assistance. First, Holt's actions in arranging a meeting between his client and the government agents to discuss a plea agreement and then abandoning him to the government agents was unreasonable under the prevailing professional norms and was not sound strategy. Holt himself essentially admitted that, in general, this behavior was not a sound strategy. (*See* 7/19/99 Hr'g Tr. at 20.) As the Court remarked during the evidentiary hearing, the Court finds Holt's absence during the conference with government agents was "highly, highly unusual." (7/2/99 Hr'g Tr. at 53.)

Second, Petitioner was prejudiced because, without counsel present, Petitioner provided evidence later used against him at trial and Petitioner failed to secure the plea agreement. Petitioner need not show actual prejudice, however, because he can show prejudice *per se* since Holt was absent for plea negotiations at the January 20, 1993 meeting. Holt's willful absence at such a critical stage of the proceedings is prejudice *per se. Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. 2039.

Petitioner need not even establish this prejudice *per se* because his counsel operated under an actual conflict of interest that affected his representation. Holt admitted that one of the reasons he did not attend the January 20, 1993 meeting was that he felt that his prior representation of a former suspect who was associated with Petitioner would affect Petitioner's ability to provide information to the authorities to secure a plea agreement. Holt testified that he felt that, if he were not present, Petitioner would be more willing to provide information about one of Holt's other

clients and, thus, Petitioner could more effectively secure a deal. This was an actual conflict because Holt had inconsistent interests and made a choice not to represent Petitioner at the January 20, 1993 meeting because of those inconsistent interests. *See Thomas,* 818 F.2d at 481. Under *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), this amounts to a Sixth Amendment violation because Holt was (1) operating under an "actual conflict of interest" and (2) that conflict adversely affected Holt's performance.[3]

█ The Sixth Circuit has held that when a defendant has suffered a Sixth Amendment violation, the appropriate remedy is a new trial. *See Warner v. United States,* 975 F.2d 1207, 1214–15 (6th Cir.1992).[4] The Supreme Court has stated that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury from the constitutional violation and should not necessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). In determining an appropriate remedy the Supreme Court noted that,

> [W]hen before trial but after the institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but ... to order a new trial if the evidence has been wrongfully admitted and the defendant convicted.

449 U.S. at 365, 101 S.Ct. 665. Here, incriminating information was obtained from Petitioner before trial in the absence of his counsel because his counsel was ineffective. Therefore, the appropriate remedy is a new trial.

The principle of adequate legal representation is fundamental to our system of justice. When the Constitutional right to legal assistance is violated, the prejudicial effects that follow from the violation should be vacated, set aside, or corrected. *See* 28 U.S.C. § 2255. Vacating and setting aside Petitioner's conviction here is not a punishment of society for the inadequacies of a lawyer but an attempt to redress unfair treatment of the accused. As the Supreme Court stated in *Brady v. Maryland,*

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts."

373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). While it may be popular for detractors to criticize the courts for granting relief based on apparent "technicalities," defenders of our system of justice know that the rights guaranteed by the Constitution are never mere technicalities. Here, upholding those rights requires vacating Petitioner's conviction and granting him a new trial.

**Conclusion**

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Petitioner's Motion Pursuant to 28 U.S.C.

---

**3.** This Court hopes that Respondent's assertion that "it is not uncommon for defense counsel who routinely represent drug dealers to choose not to attend ... interviews [with the government] for the very reason stated by Mr. Holt," namely that Petitioner would talk more freely about one of Holt's former clients, is an overstatement.

**4.** Here, as in *Warner,* there was no plea agreement, and the Court cannot order specific performance of a non-existent plea agreement.

§ 2255 [Docket Entry 101] is **GRANTED**, and his conviction and sentence are **VA-CATED** and **SET ASIDE**.

**IT IS FURTHER ORDERED** that the government may proceed with a new trial.

**SO ORDERED.**